## THE MARGE.

### No. 4379 Civil.

District Court, D. Massachusetts.

March 24, 1931.

Frederick H. Tarr, U. S. Atty., and Ellen L. Buckley, Asst. U. S. Atty., both of Boston, Mass.

F. H. Jackman and Abbott & Carroll, all of Boston, Mass., for claimant.

BREWSTER, District Judge.

This is a petition for the forfeiture of the speed boat Marge, which the government alleges has become liable to forfeiture under 46 USCA § 103 (Rev. St. § 4214, as amended) and 46 USCA § 325 (Rev. St. § 4377).

### Findings of Fact.

The Marge is a speed boat of 60.9 feet in length, 11.5 feet beam, and 6.5 feet deep. It

is equipped with three engines of 450 horse power each and capable of making a speed of 30 to 35 knots. She has two cargo holds, one fore and one aft; the aft hold having two hatches. The pilot house forward of amidships and the trunk cabin over the engine room about amidships were both covered with heavy armor plate, and the glass in the pilot house was of unusual thickness. There were no accommodations on the boat for sleeping, messing, or lounging. The Marge had for some years been under the surveillance of the Coast Guard and customs officers and had never been seen to have any of these accommodations or any yacht fittings or furnishings of any kind. She was enrolled and licensed as a pleasure vessel under said section 4214 as amended (46 USCA § 103).

On October 22, 1930, the Marge came through the Cape Cod Canal from New Bedford, and at 2.15 o'clock p. m. on that day the Coast Guard officers at Sandwich boarded and examined the boat and saw no cargo of any kind on board. The Marge was seen to go to the eastward in Cape Cod Bay until she disappeared from sight, but was later sighted off Provincetown, going out to sea at full speed. The next morning, October 23, 1930, about 8:30 o'clock, Coast Guard officers approached the Marge in their picket boat, when they observed a sack lying on the deck of the Marge under a hatch cover which was only part way over the hold. There were two small dories on the deck. In the smaller dory were a pair of oars which were bound with cotton gloves where the oars fitted into the thole pins. Upon opening the sack the officers found that it contained 12 bottles of liquor labeled "Peach Brandy," "Marie Brizard Bordeaux France." The master of the boat appeared shortly after, and his comments and conduct were not at all consistent with the innocence or ignorance which he professed when on the witness stand. Two gaffs were also found in the pilot house of the Marge. About 9 o'clock on the evening of October 22, police officers in Marblehead, who were stationed near the water, heard the sound of a motor and saw a boat without lights entering Salem Harbor. As she came between the officers and the lights on the Salem side of the harbor, it was possible to get a fairly accurate outline of the motorboat that was passing, and this outline corresponded with that of the Marge. She was then headed toward that part of the harbor known as Wyman's Cove. A little after midnight, a boat was seen going out of the harbor which answered to the same description as the one that was seen to come in, except that the boat

going in had two dories on the deck, and the boat going out had one dory on the deck and one in tow. The witnesses testified that the boat went in laden and came out light. Shortly after the boat was seen going out, the police officers discovered on the shore at Wyman's Cove 646 sacks of whisky, brandy, and liqueur. Among this liquor were 25 sacks of Peach Brandy identical in appearance with brandy found on board the Marge, and on complete chemical analysis it was found to be absolutely identical, and Dr. Adams testified that ordinarily there would be a variance if they were not of the same lot. There was also found near the liquor overcoats, rubber boots, robes, burlap bags and canvas, and a gaff similar to those found on the Marge but with a longer handle. Two of these police officers, who had observed the boat as she passed in and out of the harbor, later identified the Marge as one corresponding in all particulars with the boat they had seen on the night of October 22.

The owner of the Marge did not attend the trial, but it did appear in evidence that his home was in the vicinity of Salem. It also appeared that this boat had been purchased of the United States marshal in May, 1929, and that the present owner had made alterations in the vessel including covering the engine house with armor plate, and from the cross-examination of the master the inference is warranted that both he and the boat had been involved previously in transactions violative of the federal laws.

The master of the vessel testified and failed to satisfactorily account for the presence of the Marge as a pleasure vessel at Provincetown on that particular morning. His testimony and that of his witness was not of a kind to inspire confidence.

 The controlling question of fact in this case is whether the Marge was the boat which brought into Salem Harbor, and landed at or near Wyman's Cove, the whisky and other liquors that were found by police officers on the morning of October 23.

While the evidence offered by the libelant tending to connect the Marge with this transaction is largely circumstantial, there is such an array of proved circumstances, all pointing in the same direction, that it is difficult to escape the conclusion that it was the Marge that brought the liquor to Wyman's Cove. There is the evidence of Dr. Adams that the peach brandy was presumably of the same lot as that found at Wyman's Cove. This evidence, standing alone, would hardly be sufficient to connect the Marge with the land-

ing, but, when taken in connection with all the other facts and circumstances of the case, a special significance attaches to the testimony of Dr. Adams, and the whole abundantly warrants a finding of fact that the Marge was the boat that brought the liquor into Salem Harbor on the night of October 23.

The structure, equipment, and history of the boat was such that it taxes one's credulity to believe that it was being used for purposes purely innocent; on the contrary, it is impossible to escape the conviction that the vessel was a rum-runner, masquerading on the high seas as a pleasure vessel, and when such a vessel is discovered with a quantity of liquor on board, which corresponds in all particulars with that landed on shore in the nighttime, and this from a boat which, in outline and dimensions, is similar to the Marge, it is enough to throw the burden upon the claimant to show that it was not the Marge that was engaged in this unlawful enterprise. This burden the claimant has not sustained.

Whether this liquor was of foreign origin or not is immaterial in view of my conclusions of law, and I make no finding respecting its origin.

### Conclusions of Law.

46 USCA § 103 (Rev. St. § 4214 as amended) provides that yachts used and employed exclusively as pleasure vessels may be licensed, and further provides that: "Such vessels, so enrolled and licensed, shall not be allowed to transport merchandise or carry passengers for pay. * * * Such vessels shall, in all respects" (with immaterial exceptions) "be subject to the laws of the United States, and shall be liable to seizure and forfeiture for any violation of the provisions of this chapter."

46 USCA § 107 (Act of Jan. 16, 1895, c. 24, § 4, 28 Stat. 625) also provides that: "No licensed yacht shall engage in any trade, nor in any way violate the revenue laws of the United States; and every such yacht shall comply with the laws in all respects."

It has been held in this jurisdiction that a yacht enrolled as a pleasure vessel, engaged in the transportation of large quantities of liquor, must be presumed to have been engaged in the transportation of merchandise for pay, even though there is no direct evidence that such was the fact. The Herreshoff (D. C.) 6 F.(2d) 414; Bush v. The Conejo (D. C.) 10 F.(2d) 256; see, also, The Rosemary (D. C.) 23 F.(2d) 103.

In a forfeiture proceeding under the statutes invoked in this case, it is immaterial whether the liquor was, or was not, of foreign origin. The Conejo (C. C. A.) 16 F.(2d) 264.

I rule, in conclusion, that the vessel is liable to forfeiture under 46 USCA § 103, and a decree of forfeiture may be entered accordingly.